IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JONATHAN BEATTIE and
HEATHER BEATTIE,

                    Plaintiffs,

v.                                     CIVIL  ACTION  NO.  3:12-2528

SKYLINE CORPORATION, a foreign corporation,
CMH HOMES INC., d/b/a LUV HOMES #760 and
VANDERBILT MORTGAGE AND FINANCE, INC.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jonathan and Heather Beattie have alleged ten separate causes of action against Skyline Corporation (manufacturer of mobile homes, hereinafter "Skyline"), CMH Homes, Inc. (dealer of mobile homes, d/b/a/ Luv Homes, hereinafter "CMH"), and Vanderbilt Mortgage and Finance, Inc. (lender, hereinafter "VMF"). All ten claims stem from the Plaintiffs' purchase of a mobile home in November 2007, and the alleged faulty installation and repair thereof. These ten claims are as follows:

        Count One– Cancellation of Contract by Rejection
        Count Two– Cancellation of Contract by Revocation of Acceptance
        Count Three– Breach of Express Warranties
        Count Four– Breach of Implied Warranty of Merchantability
        Count Five– Breach of Implied Warranty of Fitness
        Count Six– Breach of Contract & Duty of Good Faith
        Count Seven– Unconscionability
        Count Eight– Common Law Negligence – Negligent Repair
        Count Nine– Unfair or Deceptive Acts or Practices

Count Ten– Common Law Fraud and Misrepresentation

Skyline filed a motion to dismiss and a memorandum in support thereof on July 23, 2012. ECF Nos. 4, 5. Plaintiffs filed a response in opposition on August 6, 2012, ECF No. 9, and Skyline filed its reply on August 16, 2012. ECF No. 12.

VMF and CMH together filed a motion to dismiss and memorandum in support thereof on August 17, 2012. ECF Nos. 13, 14. In making their motion to dismiss, VMF and CMH incorporated by reference Skyline's motion to dismiss, Skyline's memorandum in support thereof, and Skyline's reply to Plaintiffs' response. VMF and CMH also put forth additional arguments in support of their motion to dismiss. Plaintiffs filed a response in opposition to VMF's and CMH's motion to dismiss on August 31, 2012, ECF No. 15, and VMF and CMH together filed a reply on September 10, 2012. ECF No. 18. Although two separate motions to dismiss have been filed, because this is a single case, the Court will analyze the two motions in a single Opinion.

Section I analyzes all ten counts under Federal Rule of Civil Procedure 12(b)(6). Section II examines the application of Rule 9(b) to Counts Nine and Ten. Section III discusses the statutes of limitations applicable to Counts Four, Five, and Eight. Section IV considers the application of West Virginia Code § 46-2-725 to Counts One through Six. Section V focuses on remaining issues surrounding Count Six, while Section VI does the same for Count Eight. Section VII analyzes exhaustion of administrative remedies. Lastly, Section VIII discusses the application of statutes of limitation to lenders specifically.

For the reasons stated below, Skyline's motion to dismiss (ECF No. 4) and VMF's and CMH's motion to dismiss (ECF No. 13) are **GRANTED in part** as to Count Eight (Common

2

Law Negligence – Negligent Repair). Additionally, the motions are **GRANTED in part** as to Count Six (Breach of Contract & Duty of Good Faith), which can proceed only as a claim for Breach of Contract. Furthermore, Count Four (Breach of Implied Warranty of Merchantability) and Count Five (Breach of Implied Warranty of Fitness) are **DISMISSED** as to Defendants Skyline and CMH only. Plaintiffs may proceed on the balance of their claims.

## I.  Application of Rule 12(b)(6) of the Federal Rules of Civil Procedure

### A.  Standard of Review

Defendants have moved for dismissal of all claims pursuant to Rule 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.  If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Plaintiffs argue that given the purposes behind the West Virginia Consumer Credit and Protection Act, which underlies many of the causes of action in this case, the Court should interpret such causes of action broadly. Plaintiffs point to the state legislature's statement that "in construing this article, the courts [should] be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. To this end, this article shall be liberally construed so that its beneficial purposes may be served." W. Va Code § 46A-6-101. The Court makes clear, however, that the Court's analysis of pleading in general, and pleading fraud in particular (as will be discussed later), is grounded in federal law, not state law. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir. 1992) ("Generally, then, federal courts applying state-created law are still to conduct those trials under federally established rules of procedure."); *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) (citing *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed. R. Civ. P. 9(b).").

### B.  Analysis of the Ten Counts

Defendants argue that Plaintiffs' claims fail under Rule 12(b)(6). Plaintiffs respond that their pleadings do satisfy Rule 12(b)(6), and also note that motions to dismiss are rarely granted by the court and are a disfavored means of resolving litigation. Plaintiffs further argue that dismissal under 12(b)(6) would be premature, as the record remains undeveloped regarding, *inter alia*, the nature of the defects in their mobile home, repair attempts, Defendants' promises about repairs, and the applicable warranties.

As VMF and CMH themselves bring to the Court's attention, "[a]lthough as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, [the Court of Appeals has] held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). However, "the courts have made clear that the document at issue must be explicitly relied upon." *Guthrie v. McClaskey*, No. 1:11CV00061, 2012 WL 2515341, at *4 (W.D. Va. June 28, 2012). VMF and CMF have attached to their motion to dismiss the consumer complaint which Plaintiffs filed with the West Virginia Division of Labor. VMF & CMH Mot. To Dismiss, Ex. A, ECF No. 13 (hereinafter "DOL consumer complaint"). Although pleadings subsequent to the Plaintiff's Complaint commencing litigation discuss the DOL consumer complaint, Plaintiffs' Complaint itself does not. Notice of Removal, Ex. A, ECF No. 1 (hereinafter "Complaint"). Therefore, the DOL consumer complaint cannot be considered at this time.

In assessing Defendants' 12(b)(6) argument, Plaintiffs' factual assertions will be accepted as true, but legal conclusions are not entitled to this same assumption. The Court will consider the Complaint, as well as the elements of each claim. Taking Plaintiffs' factual allegations as true, including Plaintiffs' statements that Skyline damaged and improperly installed the mobile home (¶ 18), that Plaintiffs discovered nonconformities after the installation (¶ 20), and that Plaintiffs rejected and/or revoked the contract (¶ 24), the First Count (Cancellation of Contract by Rejection) survives, as does Count Two (Cancellation of Contract by Revocation of

6

Acceptance). Additionally, taking as true Plaintiffs' statements that Plaintiffs requested repairs and such repairs were not timely made (¶¶ 22, 23), Counts Three (Breach of Express Warranty) and Four (Breach of Implied Warranty of Merchantability) also satisfy Rule 12(b)(6).

Count Five (Breach of Implied Warranty of Fitness) fails Rule 12(b)(6) because Plaintiffs do not point to any particular purpose for which the mobile home was to be used, other than the ordinary purpose of being a dwelling. *See* W. Va Code § 46-2-315 ("Where the seller at the time of contracting has reason to know any *particular purpose* for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [§ 46-2-316] an implied warranty that the goods shall be fit for such purpose.") (emphasis added). Without alleging a particular purpose for the mobile home other than as a dwelling, this claim lacks an essential element, and therefore cannot go forward. *See Wilson v. Brown & Williamson Tobacco Corp.*, 968 F. Supp. 296, 302 (S.D. W. Va. 1997) (dismissing claim of breach of implied warranty of fitness for a particular purpose regarding loose tobacco products, where no purpose other than smoking was alleged).

Count Six (Breach of Contract & Duty of Good Faith) satisfies Rule 12(b)(6).

Count Seven is a closer call. West Virginia Code § 46A-2-121 prohibits clauses and contracts which are either substantively or procedurally unconscionable. Furthermore, "[u]nconscionability in West Virginia . . . requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986)). In other words, both substantive *and* procedural unconscionably are required, and Plaintiffs concede this point. ECF No. 15, at 11. Defendants argue that Plaintiffs failed to

properly allege procedural and substantive unconscionability in their Complaint. Indeed, on the face of the Complaint, it could appear that Plaintiffs "have not even alleged inadequacy of bargaining power or terms of the contract unreasonably favorable to the defendants." *Rawls v. Associated Materials, LLC*, No. 1:10-cv-01272, 2011 WL 3297622, at *6 (S.D. W. Va. Aug. 1, 2011) (dismissing Plaintiff homeowners' unconscionability cause of action regarding allegedly defective vinyl siding).

Plaintiffs counter that it would be inappropriate to dismiss their unconscionability claim at this point, noting that "[o]nly when there are no factual disputes in existence can an unconscionability claim under West Virginia Code § 46A-2-121 be determined as a question of law based on the undisputed factual circumstances and resolved through summary judgment." *Herrod v. First Republic Mortg. Corp.*, 218 W. Va. 611, 617 (W. Va. 2005). Given that this is merely the motion to dismiss stage, rather than summary judgment, *Herrod*'s warning would be even more applicable here.

Plaintiffs' pleading of Count Seven in the instant case mirrors the unconscionability claim in *McCoy v. Southern Energy Homes, Inc.*, No. 1:09-cv-1271, First Am. Compl., ECF No. 17, at 11 (S.D. W. Va. June 1, 2010). The plaintiffs in *McCoy* filed multiple causes of action stemming from their purchase of a manufactured home, suing the dealer, manufacturer, and bank assignee of the financing contract. The plaintiffs there alleged that the home experienced leaking and mold in 2009, after eleven years of occupancy. They claimed that the home was defective, improperly installed, and insufficiently repaired following a request for repairs in 1997. The court there decided that the unconscionability claim survived the motion to dismiss. Mem. Op. & Order, Sept. 28, 2011, ECF No. 118 (hereinafter "*McCoy* Mem. Op. & Order"). Therefore,

although Plaintiffs' allegation of unconscionability is quite sparse, given the early stage of the litigation, it would be prudent to similarly allow this claim to proceed.

Count Eight (Common Law Negligence- Negligent Repair) satisfies the common law elements of negligence, and survives Rule 12(b)(6).

Count Nine (Unfair or Deceptive Acts or Practices) also satisfies Rule 12(b)(6). Much of Plaintiffs' description of this claim, specifically ¶ 65(a)-(d) of the Complaint, merely mirrors back the statutory language without adding any valuable facts, which is what the discussion above cautions against. However, ¶ 65(e), (g), (h), and (i) add enough factual detail for Count Nine to survive under Rule 12(b)(6).

Count Ten (Common Law Fraud and Misrepresentation) also appears to be a close call, but alleges just enough information to survive Rule 12(b)(6) by indicating that CMH, as VMF's agent, made false representations about the quality and condition of the mobile home and the material terms of the credit agreement, as well as properly alleging the other elements of the common law claim.

To summarize, Count Five (Breach of Implied Warranty of Fitness) fails Rule 12(b)(6), and is dismissed. The other claims survive Rule 12(b)(6).


## II.  Analysis of Counts Nine and Ten under Rule 9(b)

### A.  Standard of Review

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Defendants argue that Count Nine (Unfair or Deceptive Acts or Practices) and Count Ten (Common Law Fraud

and Misrepresentation) sound in fraud, and therefore must satisfy Rule 9(b)'s heightened pleading standard. These two claims do sound in fraud and do satisfy this standard. Therefore, Counts Nine and Ten should not be dismissed.

If a claim "sounds in fraud," despite its label, then Rule 9(b)'s heightened pleading requirements apply: "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud. When a plaintiff makes an allegation that has the substance of fraud, therefore, he cannot escape the requirements of Rule 9(b) by adding a superficial label of negligence or strict liability." *Cozzarelli v. Inspire Pharms., Inc.,* 549 F.3d 618, 629 (4th Cir. 2008). Under this standard, a plaintiff is required to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999)) (internal quotation marks omitted). In other words, plaintiffs must describe the "'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

In some circumstances, relaxing the heightened pleading requirement may be appropriate, specifically where "the evidence of fraud is within a defendant's exclusive possession." *Moore's Federal Practice and Procedure* § 9.11(1)(b)(i) (2012). Keeping that in mind, though, "in the ordinary case when the claimant has adequate access to the necessary facts, the claimant may not plead fraud on information and belief nor in a vague manner." *Id.* When several defendants are party to the fraud claims, the plaintiff "usually may not group all wrongdoers together in a single set of allegations. Rather, the claimant is required to make specific and separate allegations against each defendant." *Id.* Despite all these considerations, "[a] court should hesitate to dismiss

10

a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927, at *10 (S.D. W. Va. Mar. 31, 2008). Additionally, as explained in the previous section, pleading standards for Rule 9(b) are governed by federal law, not state law.

### B.  Analysis of Counts Nine and Ten

In the instant case, Plaintiffs have provided sufficient detail to satisfy Rule 9(b). As to Count Nine, Plaintiffs have specified the subject matter of the fraudulent statements, which were about the value of collateral and the cost of the consumer credit sale, the defect-free condition of the home, and repairs that Plaintiffs requested. *Rawls*, 2011 WL 3297622, at *5. Additionally, the time frame is sufficiently clear, as the complaint states the date of purchase. *See id.* at *5 (noting that, in connection with alleged fraudulent statements during the sale of vinyl siding, that "[p]laintiffs have . . . plead with requisite particularity the time frame during which the fraudulent statements were made, by referencing the purchase and installation of the vinyl siding in July 2005."). While Count Nine does not specify which of the Defendants made which statements, given each Defendant's knowledge of their own particular role in the sale—as either the manufacturer, dealer, or lender—and Defendants' knowledge that requests for repairs were made, Defendants have sufficiently "been made aware of the particular circumstances for which they will have to prepare a defense at trial." *Gwinn*, 2008 WL 867927, at *12.

Count Ten also sufficiently specifies the subject matter of the fraudulent statements as being statements about the mobile home's quality and condition, as well as material terms of the

credit agreement, and specifies that employees of dealer Skyline made the statements. The timeframe is also clear. Plaintiffs' pleading of Count Ten in the instant case largely mirrors that in *McCoy*. There, the court held that the claim as to fraud and misrepresentation survived the motion to dismiss. Given the similarity in how fraud was pled in the instant case, as well as examination of the present Complaint, Count Ten should go forward here. Therefore, Counts Nine and Ten both satisfy Rule 9(b).

### III. Applicable Statute of Limitations for Counts Four, Five, and Eight

Defendants argue that actions for recovery of personal injuries due to breach of express or implied warranties are subject to the two-year statute of limitations found at West Virginia Code § 55-2-12:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

In support of this argument, Defendants cite *Taylor v. Ford Motor Corp.,* which states that "where a person suffers personal injuries as a result of a defective product and seeks to recover damages for these personal injuries based on a breach of express or implied warranties, the applicable statute of limitations is the two-year provision contained in W. Va. Code, 55-2-12." Syllabus, *Taylor v. Ford Motor Corp*, 408 S.E.2d 270 (W. Va. 1991). In that case, the plaintiff was suing for personal injuries suffered in a car accident that left her a quadriplegic, and argued

that Ford had breached the implied warranty of fitness in defectively designing that car. The court in that case elaborated that:

> Tort law traditionally has been concerned with compensating for physical injury to person or property. Contract law has been concerned with the promises parties place upon themselves by mutual obligation. Physical harm to the defective product belongs with tort principles; reduction in value merely because of the product flaw falls into contract law.

*Id.* at 273 (quoting *Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854, 859 (W. Va. 1982)). The court also noted that the applicable law "does suggest that we look to tort principles where personal injuries are involved, and that a sudden calamitous event is the hallmark of many tort injuries." *Id.* at 273.

Defendants also point to *Reynolds v. The Moore Group, Inc.,* where the plaintiffs claimed "certain putative damages, which include, but are not limited to, emotional pain and suffering, mental anguish, loss of earning capacity, loss of the enjoyment of life and emotional distress, [and] loss of consortium" based on respondents' concealment that the car purchased by plaintiffs had defects due to an earlier collision. No. 101554, 2011 LEXIS 147 (W. Va. June 24, 2011). The Supreme Court of Appeals affirmed the circuit court below, which determined that plaintiffs claimed personal injuries, and so were subject to the two-year statute of limitations, even citing the language from *Taylor* regarding breach of express or implied warranties. *Id.* Without the benefit of reading the decision of the circuit court or the pleadings, it is impossible to know the rationale for this decision.

Other cases, however, have grappled with the uncertainty of what statute of limitations to apply when the claim could conceivably be either a tort or contracts cause of action. Specifically, a "complaint that could be construed as being either in tort or on contract will be presumed to be

on contract whenever the action would be barred by the statute of limitation if construed as being in tort." *Smith v. Stacy*, 482 S.E.2d 115, 120 (W. Va. 1996) (quoting Syl. Pt. 1, *Cochran v. Appalachian Power Co.*, 162 246 S.E.2d 624 (W. Va. 1978)). In *Stacy*, the court determined that the plaintiff's legal malpractice complaint could be reasonably viewed to involve breach of the contract itself *or* breach of "general" attorney obligations. In *Cochran*, plaintiff coal mine operator sued Appalachian Power Company for wrongfully shutting off power to a mine, causing damage to the mine itself. The Supreme Court of Appeals in *Cochran* used the language quoted above when it affirmed the trial court's decision not to apply a two-year statute of limitations.[1] Further clarity was added by *Holmes v. Chesapeake Appalachia, LLC*, No. 5:11CV123, 2012 WL 3647674 (N.D. W. Va. Aug. 23, 2012), where the plaintiffs alleged slander of title, the tort of outrage, and civil conspiracy, on top of contract claims. For those tort actions, the two-year statute of limitations would apply, for "[s]imply because part of the plaintiffs' complaint sounds in contract does not mean that the entirety of that complaint becomes a contract action." *Id.* at 24.

Based on this line of cases, Count Four (Breach of Implied Warranty of Merchantability) and Count Five (Breach of Implied Warranty of Fitness)[2] will be treated as contract actions

---

[1] The court in *Taylor*—where the plaintiff became a quadriplegic in a car accident—chose to ignore the plaintiff's reliance on *Cochran* because *Cochran* did not discuss the U.C.C. as reflected in West Virginia Code § 46-2-725. However, the court in *Cochran* did explicitly discuss contractual actions, as opposed to tort actions. Also *Taylor*, unlike the instant case, clearly involved personal physical injuries, and so is distinguishable from the instant case.

[2] It should be kept in mind, however, that regardless of the statute of limitations that applies, Counts Four and Five should be dismissed on other grounds as to Skyline and CMH, as explained elsewhere in this opinion. The Court only mentions the statute of limitations that would otherwise be applicable for clarity of the record.

having a four-year statute of limitations.[3] These causes of action do not allege or imply personal injury. Count Eight (Common Law Negligence – Negligent Repair) also does not allege or imply personal injury, but negligence is the quintessential tort action, and so a two-year statute of limitations will apply to Count Eight only.

While the statute of limitations generally begins to run when the injury occurs, under the discovery rule, the statute of limitations is tolled until the individual discovers or could have discovered the alleged defect with reasonable diligence. *University of West Virginia Bd. of Trustees v. Van Voorhies*, 84 F. Supp. 2d 759, 768 (N.D. W. Va. 2000), *aff'd*, 278 F.3d 1288 (Fed. Cir. 2002). While the home in this case was installed in November 2007, nearly 5 years ago, Plaintiffs do not specify the date that they discovered the damages, or the dates that alleged negligent repairs were made. Thus, it is impossible at this point to know if the statute of limitation has run on such tort claims. As the Court in *Rawls* noted, "[t]he United States Court of Appeals for the Fourth Circuit has held that a district court may address an affirmative defense on a 12(b)(6) motion to dismiss, but only if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Rawls*, 2011 WL 3297622, at *12 (citations omitted). Therefore, following the reasoning of the court in *Rawls*, Count Eight should not be dismissed for failure to satisfy the statute of limitations, as factual development concerning the timing of events, particularly repair requests, has not yet occurred. *Id* at *13 ("Since the court is missing crucial information related to the timing of plaintiffs' discovery of the fraud or

---

[3] Plaintiffs concede that the longest statute of limitations applicable to their breach of contract and breach of warranty claims would be four years, based on West Virginia Code § 46-2-725(1): ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued"). ECF No. 9 at 7.

misrepresentations, the court finds that a determination of timeliness is best left to a later date, once the facts of the case are better developed.").

### IV. Analysis of Counts One Through Six under West Virginia Code § 46-2-725 as Potentially Time Barred

#### A. Count One- Cancellation of Contract by Rejection

West Virginia Code § 46-2-602(1) states that "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Plaintiffs argue that the doctrine of equitable estoppel applies to this case, and cite several cases in support of this proposition. *See e.g. Bradley v. Williams*, 465 S.E.2d 180, 184-185 (W. Va. 1995) (quoting Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 387 S.E.2d 320 (W. Va. 1989) ("estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.")). Defendants argue that the cases cited by Plaintiffs involve allegations and causes of action different from those in the instant case. Additionally, this Court has not independently found any authority specifically applying the doctrine of equitable estoppel to this statute, or to rejection of goods in cases analogous to this one.

Nonetheless, this Court will allow the claim to go forward, and finds that estoppel could apply to this situation. In the instant case, Plaintiffs asked Defendants to repair the alleged defects and gave them time to do so; Plaintiffs should not now be penalized for having given Defendants a chance to make the repairs before bringing this legal action. It is also worth noting that in *Rawls*, the court allowed the plaintiffs' cancellation of contract by rejection claim to go

forward, stating that the "defendants have presented no argument related to the reasonableness of plaintiffs' timing in their attempt to reject the contract." 2011 WL 3297622, at *3. Although that decision did not discuss estoppel, the instant case likewise presents a situation where the reasonableness of the timeframe of Plaintiffs' rejection has not yet been challenged. Therefore, this Court will allow this claim to proceed for argument on the merits concerning the reasonableness of Plaintiffs' rejection.

### B.  Count Two– Cancellation of Contract by Revocation of Acceptance

West Virginia Code § 46-2-608 states in part as follows:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
>> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>>
>> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

In *Rawls*, the court allowed the plaintiff's cancellation of contract by revocation claim to go forward, because defendants presented no reasons as to why the revocation was invalid under that statute. 2011 WL 3297622, at *12.

Plaintiffs here argue that any delay in revoking acceptance could be justified, stating that "[w]here delay in revoking acceptance is attributable to efforts or promises to correct the defect or nonconformity in the goods, revocation even after a relatively lengthy period of time may still

be timely within the statute." Syl. Pt. 1, *City Nat'l Bank of Charleston v. Wells*, 384 S.E.2d 374, 381 (W. Va. 1989). Defendants counter that *City Nat'l Bank of Charleston* does not allow revocation to occur after the statute of repose, in this case § 46-2-725, has run. West Virginia Code § 46-2-725 states in part as follows:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach…

However, at least one case has recognized that four years can be a reasonable delay when the plaintiffs give the defendants opportunities to fix the alleged problems. *Ybarra v. Modern Trailer Sales*, 94 N.M. 249, 250-251 (N.M. 1980).

Given the fact-dependent nature of the inquiry into reasonableness, Plaintiffs' claim should not be dismissed. *See City Nat'l Bank of Charleston*, 384 S.E.2d at 381. Just as with the discussion of estoppel above, Plaintiffs should not be faulted for having given Defendants multiple chances to repair the mobile home, such that they cannot now bring their claim for revocation. Reasonableness of delay in revoking is an issue of fact to be developed later, and so this claim survives the motion to dismiss.

### C. Count Three– Breach of Express Warranties

West Virginia Code § 46-2-313 discusses how express warranties are created by the seller. West Virginia Code § 46-2-725(2), referred to as the future performance exception, can extend the usual statute of limitations applicable to express warranties:

18

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In *Rawls*, the court decided that the future performance exception did apply to the plaintiffs' breach of express warranties claim because the lifetime express warranty, submitted by plaintiffs as an exhibit accompanying their memorandum in opposition to the motion to dismiss, "explicitly lengthens the warranty period." 2011 WL 3297622, at *2. In *McCoy*, the court did not dismiss the plaintiffs' breach of express warranty cause of action, noting one plaintiff's claim that the roof in that case was under a 50-year warranty.

In the instant case, Plaintiffs have not alleged how long any express warranty lasted. Also, Plaintiffs have not submitted any copy of their warranties, nor alleged that they do not for some reason have access to such warranties at this time. Though they claim the warranties extend to future performance, the warranties are not quoted to substantiate this claim. As this is the motion to dismiss stage, the Court will nonetheless allow the claim to go forward, keeping in mind that a stronger showing will be required for the Plaintiffs to ultimate succeed on their claim at a later stage.

## D.  Count Four– Breach of Implied Warranty of Merchantability, And Count Five– Breach of Implied Warranty of Fitness

The future performance exception of West Virginia Code § 46-2-725(2) does not apply to breach of implied warranty claims. *Rawls*, 2011 WL 3297622, at *2 (citing, e.g., *St. Paul Fire & Marine Ins. Co. v. Emerson Network Power,* No. 2:09-cv-234, 2010 WL 4255883 (S.D. W. Va.

Oct. 15, 2010); *Atl. Health Sys. v. Cummins Inc.,* No. 08-3192, 2010 WL 5252018 (D.N.J Dec. 17, 2010) ("Implied warranties, by their very nature, cannot extend to future performance because such an extension must be explicit and an implied warranty cannot explicitly state anything."); *W. Recreational Vehicles v. Swift Adhesives*, 23 F.3d 1547, 1550 (9th Cir. 1994)). The court in *McCoy* likewise noted the long line of cases showing that the exception did not apply to breach of implied warranty claims, including *Rawls* and others cited in that opinion. *McCoy* Mem. Op. & Order, at 7-8. Here, the statute of limitations began to run when delivery of the mobile home occurred in November 2007, and the civil case was filed in 2012, placing this claim outside the four-year statute of limitations. Therefore, both Counts Four and Five should be dismissed on these grounds, with prejudice. *Rawls*, 2011 WL 3297622, at *2 n.1. However, as discussed in Section VIII, these two Counts will only be dismissed as to Defendants Skyline and CMH, and will proceed against Defendant VMF.

## V. <u>Count Six– Breach of Contract & Duty of Good Faith</u>

In *McCoy*, the court noted that West Virginia law does not create a separate cause of action for good faith, and therefore a good faith claim would be included within the breach of contract claim itself. *McCoy* Mem. Op. & Order, at 8-9 (citing this Court in *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631 (S.D. W. Va. 2005)). Because the breach of contract claim was barred by the four-year statute of limitations in that case, the breach of good faith claim was likewise barred. *McCoy* Mem. Op. & Order, at 9. Indeed, "a breach of the obligation of good faith imposed by force of the U.C.C. does not give rise to an independent cause of action." *Doyle v. Fleetwood Homes of Va., Inc.*, 650 F. Supp. 2d 535, 540 (S.D. W. Va.

2009) (dismissing claim for breach of duty of good faith). Therefore, the breach of contract claim can only survive without the breach of good faith allegation.

A four-year statute of limitations applies to Count Six, under West Virginia Code § 46-2-725(1): "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued". However, this claim should not dismissed at this stage, because it would be prudent to allow further factual development to occur in regards to timing, in line with the discussion from Section III, and because of the possible application of equitable estoppel, as discussed in Section IV(A).

Therefore, Count Six is dismissed in part, and can proceed simply as a Breach of Contract claim.

## VI. <u>Count Eight– Common Law Negligence – Negligent Repair</u>

Defendants allege that Plaintiffs' negligence claim should be dismissed because "West Virginia law generally forbids tort-based claims for defective products seeking purely economic damages." *Commercial Steam Cleaning, L.L.C. v. Ford Motor Co*., No. 2:09-1009, 2010 WL 1734792, at *7 (S.D. W. Va. Apr. 27, 2010) (quoting *Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d 854, 859 (1982)) (noting exception for recovery under strict products liability due to "sudden calamitous event"). Plaintiffs bring up the valid point that they are merely pleading plausible alternative causes of action, and that they do not have the benefit of fully knowing yet what happened to their mobile home. That point, however, does not change the fact that *Star Furniture* and *Commercial Steam* refer to an exception for strict liability causes of action, not negligence causes of action. Plaintiffs here have not brought a strict products claim,

and so do not fall within the exception.

Defendants also note that "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract." *Lockhart v. Airco Heating & Cooling*, 211 W. Va. 609, 614 (W. Va. 2002); *see also Scott Dev. Co. v. Martin Marietta Materials, Inc.*, No. Civ.A. 2:05-0802, 2006 WL 1049503 (S.D. W. Va. Apr. 18, 2006) (leaving undecided whether agent employee of the defendant was liable in tort for alleged malicious destruction of property).

Here, the Complaint makes it clear that Plaintiffs requested repairs pursuant to the warranties. Notice of Removal, Ex. A, ECF No. 1, ¶ 60 ("Plaintiffs contacted Defendants to request repair of the defective condition(s) covered under the express and implied warranties."). This supports the contention that a duty independent of the contract did not exist. Also, any facts subsequently uncovered would go to how or why Defendants' breached their *contractual* duties. Because Plaintiffs do not point to any duties owed by Defendants which arise outside of the contract itself, Plaintiffs' Count Eight must be dismissed.


### VII.   Dismissal for Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiffs were required by West Virginia law to invoke administrative remedies, which Plaintiffs did, but also claim that Plaintiffs have not properly exhausted the "required" administrative procedure. However, whether or not Plaintiffs were required to invoke the administrative process in the first place, West Virginia Code § 21-9-

11a(b) clearly indicates when a Plaintiff can file a civil action after having first sought administrative relief:

> (b) Period of exclusive administrative remedy. *No purchaser or owner of a manufactured home may file a civil action seeking monetary recovery or damages for claims related to or arising out of the manufacture, acquisition, sale or installation of the manufactured home until the expiration of ninety days after the consumer or owner has filed a written complaint with the board.* The board has a period of ninety days, commencing with the date of filing of the complaint, to investigate and take administrative action to order the correction of defects in the manufacture or installation of a manufactured home. This period of exclusive administrative authority may not prohibit the purchaser or owner of the manufactured home from seeking equitable relief in a court of competent jurisdiction to prevent or address an immediate risk of personal injury or property damage. The filing of a complaint under this article shall toll any applicable statutes of limitation during the ninety-day period but only if the applicable limitation period has not expired prior to the filing of the complaint. (emphasis added).

Plaintiffs filed their Complaint on June 15, 2012, more than 90 days after filing their DOL consumer complaint in September 2011.  Under the terms of the statute, Plaintiffs therefore filed their civil action within the correct timeframe.

Defendants also argue "that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." *Sturm v. Bd. of Educ.*, 223 W. Va. 277, 282 (W. Va. 2008) (quoting Syl. Pt.1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n*, 104 S.E.2d 320 (W. Va. 1958)). However, it would seem counterintuitive to find that because the West Virginia statute provides a remedy, that remedy must be fully exhausted before seeking civil relief, even though the statute itself *explicitly allows* individuals to file a civil action after 90 days. Therefore, Plaintiffs have properly utilized the administrative procedure.

## VIII.   <u>Statute of Limitations as to Lenders</u>

Plaintiffs argue in their final responsive pleading that "[s]ince Plaintiffs are still currently indebted to Vanderbilt, any statute of limitations that might have applied to their contract claims is thus irrelevant." ECF No. 15, at 10.  They point to West Virginia Code § 46A-2-102(3) to support their ability to proactively sue lender VMF for cancellation of their debt:

> A claim or defense which a buyer or lessee may assert against an assignee of such instrument, contract or other writing under the provisions of this section may be asserted only as a matter of defense to or setoff against a claim by the assignee: Provided, That if a buyer or lessee shall have a claim or defense which could be asserted under the provisions of this section as a matter of defense to or setoff against a claim by the assignee were such assignee to assert such claim against the buyer or lessee, then such buyer or lessee shall have the right to institute and maintain an action or proceeding seeking to obtain the cancellation, in whole or in part, of the indebtedness evidenced by such instrument, contract or other writing or the release, in whole or in part, of any lien upon real or personal property securing the payment thereof: Provided, however, That any claim or defense founded in fraud, lack or failure of consideration or a violation of the provisions of this chapter as specified in section one hundred one, article five of this chapter, may be asserted by a buyer or lessee at any time, subject to the provisions of this code relating to limitation of actions.

*See also* Syl. Pt. 4, *Chrysler Credit Corporation v. Copley*, 428 S.E.2d 313 (W. Va. 1993). Plaintiffs claim that as long as VMF would be able to sue Plaintiffs regarding the debt, Plaintiffs can proactively bring their own suit. Defendant VMF did not address this specific claim in its own reply, ECF No. 18. At this point, the Court will allow Counts Four and Five to proceed against Defendant VMF, so that this issue can be more fully discussed at later stages. However, Counts Four and Five are dismissed as to Defendants Skyline and CMH, as discussed in Section IV(D).

**Conclusion**

For the reasons stated above, Skyline's motion to dismiss (ECF No. 4) and VMF's and CMH's motion to dismiss (ECF No. 13) are **GRANTED in part** as to Count Eight (Common Law Negligence – Negligent Repair). Additionally, the motions are **GRANTED in part** as to Count Six (Breach of Contract & Duty of Good Faith), which can proceed only as a claim for Breach of Contract. Furthermore, Count Four (Breach of Implied Warranty of Merchantability) and Count Five (Breach of Implied Warranty of Fitness) are **DISMISSED** as to Defendants Skyline and CMH only. Plaintiffs may proceed on the balance of their Counts.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        November 5, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE