IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JONATHAN BEATTIE and
HEATHER BEATTIE,

                Plaintiffs,

v.                                            CIVIL ACTION NO.   3:12-2528

SKYLINE CORPORATION, a foreign corporation,
CMH HOMES, INC., d/b/a LUV HOMES #760 and
VANDERBILT MORTGAGE AND FINANCE, INC.,

                Defendants,

v.

BOB'S HOME SERVICES, LLC,

                Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following motions: Bob's Home Services, LLC's Motion for Summary Judgment (ECF Nos. 102), Skyline Corporation's Motion for Summary Judgment (ECF No. 169), Plaintiffs' Motion for Summary Judgment (ECF No. 182), Vanderbilt Mortgage and Finance, Inc.'s Motion for Summary Judgment (ECF No. 190), CMH Homes, Inc.'s Motion for Summary Judgment (ECF No. 192), and Bob's Home Services, LLC's Supplemental Motion for Summary Judgment or Motion to Compel Arbitration (ECF No. 177).

**I.    Statement of Facts**

On November 12, 2007, Plaintiffs Jonathan and Heather Beattie entered into a sales contract with CMH Homes, Inc. (dealer of mobile homes, d/b/a/ Luv Homes, hereinafter "CMH")

for the purchase of a mobile home manufactured by Skyline Corporation ("Skyline"). ECF No. 1, Ex. 1. CMH was responsible for installation of the home through a contractor that it would select. The purchase was financed through lender Vanderbilt Mortgage and Finance, Inc. ("VMF"). ECF No. 191. The home was installed in December, 2011. ECF No. 193.

Shortly after moving into the home the Beatties began noticing problems. Between 2008 and 2011, CMH "performed warranty services to correct drywall cracks that ran along the marriage line down the length of the home." ECF No. 190, Ex. 3. Skyline also made multiple repairs in 2009 and 2010. ECF No. 170. Plaintiffs allege that in 2011, a CMH employee inspected the attic area of the home and "discovered that the home was never properly bolted together along the marriage line." ECF No. 183. Plaintiffs further allege that CMH added bolts at that time but did not fully document the defects it found or repairs that it made. ECF No. 183.

In February, 2010, Plaintiffs filed for bankruptcy under Chapter 7. ECF No. 190, Ex. 4. The Beatties did not list a potential lawsuit as an asset of the bankruptcy estate. ECF No. 190, Ex. 6. Jonathan Beattie reaffirmed the debt for the manufactured home with VMF. ECF No. 190, Ex. 5. In 2010, Plaintiffs were granted a discharge and their bankruptcy case was closed. ECF No. 219.

In August, 2011, Plaintiffs filed a complaint with the West Virginia Manufactured Housing Construction and Safety Standards Board. An officer from the Board inspected the home on September 14, 2011 and found a number of defects. ECF No. 169, Ex. 6. Skyline allegedly offered to make the required repairs but the plaintiffs refused. ECF No. 170. On February 22, 2012, Jonathan Beattie sent a demand letter to Skyline, CMH, and VMF informing them that the Beatties wished to revoke acceptance of the home and sought money damages. ECF No. 169, Ex. 18. Plaintiffs also sent a letter to their bankruptcy trustee informing him that they wished to

pursue these claims. ECF No. 219, Ex. 8. The trustee stated that he was not interested in pursuing the claims as an asset of the estate. ECF No. 219, Ex. 9. Plaintiffs stopped making payments to VMF in April, 2012. ECF No. 192, Ex. 8. They still reside in the home. ECF No. 192, Ex. 4.

On June 15, 2012 Plaintiffs filed a complaint against Skyline, CMH, and VMF relating to the installation and repair of their manufactured home. ECF No. 1. All three defendants filed motions for summary judgment. On December 5, 2012, CMH and VMF filed a third-party complaint against MJW Towing, Inc. ("MJW") alleging that MJW was the contractor hired to install Plaintiffs' home. ECF No. 29. CMH and VMF later dismissed the complaint against MJW and on August 26, 2013 filed a third-party complaint against Bob's Home Services, LLC ("Bob's") alleging that Bob's was the contractor responsible for installing Plaintiffs' home. ECF No. 66, ECF No. 70.

Bob's moved for summary judgment on June 10, 2014 contending that "no contract for the delivery of the Beattie home exists as between CMH and Bob's." ECF No. 102. On September 15, 2014 Bob's filed a supplemental motion for summary judgment and moved, in the alternative, to compel arbitration. ECF No. 177. Bob's maintains the position that it was not contracted to install the home. ECF No. 178. Bob's also alleges that, if it did install the home, the installation was performed pursuant to the Independent Contractor Application and Agreement, a master contract between CMH and Bob's. ECF No. 178. The agreement contains an arbitration clause requiring the parties to resolve any conflicts arising under the agreement through a binding arbitration process. ECF No. 102, Ex. 7. CMH alleges that it entered into an oral contract with Bob's to install Plaintiffs' home and that the master contract does not apply. ECF No. 207.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "'[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 822 (D. Md. 1998) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

### III. Skyline's Motions for Summary Judgment

Skyline filed a motion for summary judgment on all remaining claims against it. ECF No. 169. Skyline correctly states that "Plaintiffs have alleged non-conformities in the installation," not the manufacturing of the home. ECF No. 169. Skyline was not responsible for the installation of the home and is thus not implicated in the majority of Plaintiffs' claims. The only claim in which Plaintiffs specifically accuse Skyline of fault is Count Ten, which claims common law fraud and misrepresentation.

The elements of an action for fraud are:

(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

*Bowens v. Allied Warehousing Servs.*, 729 S.E.2d 845, 852 (W. Va. 2012). Here, plaintiffs contend that Skyline, and employee Bill Robb, knew that the home was improperly installed "but concealed their knowledge of the defects and/or defective installation from Plaintiffs throughout the course of numerous repair attempts and related communications." ECF No. 169, Ex. 17. Plaintiffs have not produced any evidence showing that Skyline or Mr. Robb knew of the defects in installation. Mr. Beattie specifically stated that Mr. Robb never went into the attic to inspect the alleged defects in the marriage line. ECF No. 169, Ex. 9. Mr. Beattie also testified that he could not say if Mr. Robb had ever lied to him. ECF No. 169, Ex. 9. Moreover, if Skyline knew that the defects in the home were caused by improper installation, Skyline would have every incentive to inform the plaintiffs of this fact and absolve itself of any responsibility for those defects. Plaintiffs' claims against Skyline thus cannot survive summary judgment. Accordingly, Skyline's Motion for Summary Judgment (ECF No. 169) is **GRANTED**.

### IV.     CMH, VMF, and Plaintiffs' Motions for Summary Judgment

The plaintiffs, CMH, and VMF have each filed a motion for summary judgment. These motions substantially overlap and will thus be discussed together in this section, which is organized by the counts in the complaint.

#### A. Count One: Cancellation of Contract by Rejection

A buyer can only reject goods if she does not accept them. After acceptance, revocation, but not rejection, may be available. *See Shreve v. Casto Trailer Sales, Inc.*, 149 S.E.2d 238, 242-43 (W. Va. 1966). Generally, acceptance occurs when a buyer takes some action, such as moving into a home and making payments, which indicates ownership. *See id*. Here, Plaintiffs have lived in the manufactured home for several years and made payments on it until 2012. They have therefore accepted the home and cannot now attempt to reject it. CMH and VMF's motions for summary judgment are **GRANTED** as to this count.

#### B. Count Two: Cancellation of Contract by Revocation of Acceptance

West Virginia Code Section 46-2-725 states: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." W. Va. Code § 46-2-725 (1963). Defendants contend that this statute of repose bars Plaintiffs' claim for revocation and thus they are entitled to judgment as a matter of law. There is a split of authority on the applicability of this statute of repose to revocation claims. Several courts have concluded that the statute of repose applies to rejection and revocation claims because such claims are based on the seller's alleged breach of contract. *See McCoy v. Southern Energy Homes, Inc.*, No. 1:09–1271, 2012 WL 1409533, at *9 (S.D. W. Va. Apr. 23, 2012); *Snyder v. Boston Whaler, Inc.*, 892 F. Supp. 955, 959 (W.D. Mich. 1994). Others have reasoned that the

statute of repose is not applicable because breach and revocation are governed by different sections of the UCC and because the remedies for each "are different remedies that require different proofs." *Jaramillo v. Gonzales*, 50 P.3d 554, 558 (N.M. Ct. App. 2002). Revocation cancels the contract, whereas a claim for breach leaves the contract unchanged. *Id.*; *see also Shreve*, 149 S.E.2d at 242.

The Court finds the latter reasoning persuasive. Revocation and breach of warranty claims are alternative remedies. Furthermore, the UCC's revocation provision, unlike the breach provisions, "sets forth its own time limitation for seeking revocation." *Jaramillo*, 50 P.3d at 559. West Virginia Code Section 46-2-608 states: "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it." W. Va. Code § 46-2-608 (1963). This test measures the proper timing for revocation from the time of discovery, whereas the statue of repose expressly prohibits consideration of the Plaintiffs' "knowledge of the breach." *See* W. Va. Code § 46-2-725.

Although the Supreme Court of Appeals of West Virginia has not directly addressed the issue, the court's reasoning in *City Nat'l Bank of v. Charleston v. Wells*, 384 S.E.2d 374 (W. Va. 1989), supports the conclusion that the statue of repose is inapplicable. In that case, the court addressed whether the plaintiff timely revoked acceptance of a defective truck fourteen months after discovering the defect. *City Nat'l*, 384 S.E.2d at 381. Although the opinion does not address the statute of repose, the court held that "where delay in revoking acceptance is attributable to efforts or promises to correct the defect or nonconformity in the goods, revocation even after a relatively lengthy period of time may still be timely within the statute." *Id.* The court then went on to cite a long list of cases where revocation has been permitted after significant delay. *Id.* The court concluded that whether revocation is timely is a matter to be determined by

the jury. *Id.* The issue of timeliness is thus a question for the jury to analyze under Section 46-2-608. Plaintiffs' claim for revocation is not barred by the four year statute of repose.[1]

As the claim is not time-barred, the Court must next address whether Plaintiffs have raised a genuine issue of material fact for trial. A buyer may revoke acceptance of a good "whose nonconformity substantially impairs its value to him" if the buyer had a "reasonable assumption that its nonconformity would be cured and it has not been seasonably cured" or "without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." W. Va. Code, § 46-2-608 (1963). Here, Plaintiffs claim that they initially did not discover the defects in the home because (1) they were difficult to discover and (2) once they discovered that the home was nonconforming, they reasonably relied on the defendants' assurances that the home would be promptly repaired. When repairs failed, the plaintiffs notified the defendants that they wished to revoke acceptance and stopped making payments. Plaintiffs have presented sufficient evidence in support of these allegations to raise genuine issues of fact for trial. Accordingly, CMH and VMF's motions for

---

1 In addition to the statute of repose, VMF raised several other defenses on this and the other remaining claims which warrant brief discussion. First, VMF maintains that by signing a reaffirmation agreement, Jonathan Beattie is now estopped from bringing claims under the original contract. The Court disagrees. The agreement reaffirmed the Beatties' debt to VMF but did not vitiate the terms of the original contract. Second, VMF argues that only the bankruptcy trustee, and not the plaintiffs, has standing to bring claims on the home. Plaintiffs informed the trustee that they sought to bring this suit and the trustee responded that he did not wish to pursue the claims as an asset of the bankruptcy estate. Furthermore, Plaintiffs reaffirmed their debt and maintain ownership of the home. Plaintiffs thus reserve the right to bring their own claims. Finally, VMF argues that Plaintiffs are estopped from bringing these claims because they did not list the claims on their bankruptcy schedules. Here, the plaintiffs were granted a discharge and their bankruptcy case was closed in 2010. Plaintiffs did not discover the structural defects in the marriage line until 2011. They therefore did not know at the time of their bankruptcy action that they had the present claims. Moreover, judicial estoppel is inapplicable in the absence of bad faith. *Williams v. Basic Contracting Serv., Inc.*, No. 5:09-cv-00049, 2009 WL 3756943, at *2 (S.D. W. Va. Nov. 9, 2009). VMF has presented no evidence of bad faith here. VMF's arguments are thus without merit.

summary judgment are **DENIED** as to this count.

### C. Counts Three, Four, Five, and Six: Breach of Contract and Warranties

Defendants contend that the four-year statue of repose in Section 46-2-725 bars Plaintiffs' claims for breach of the contract, express warranties, and implied warranties. West Virginia courts have held that there are no equitable exceptions to this statute of repose. *See Basham v. General Shale*, 377 S.E.2d 830, 835 (W. Va. 1988). Section 46-2-725 does contain one exception: "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Generally, such a future guarantee only exists where the contract makes an explicit and "specific reference to a future time period." *Comm'rs of Fire Dist. No. 9 v. American La France*, 424 A.2d 441, 445 (N.J. Super. Ct. App. Div.1980). No such explicit guarantee of future performance can be found in the contract here. The four year statute of repose thus applies.

Plaintiffs contend that the statute of repose as to their claims against VMF is waived under West Virginia Code Section 46A–2–102. In *McCoy v. Southern Energy Homes, Inc.*, the court held that "only where a buyer/consumer is asserting claims in defense to a suit against him does the waiver of statute of limitations come into play" under § 46A–2–102. *McCoy v. Southern Energy Homes, Inc.*, No. 1:09–1271, 2012 WL 1409533, at *8, n. 9 (S.D. W. Va. Apr. 23, 2012). Here, Plaintiffs are asserting their own claims, not defenses. Thus the statute of limitations has run as to the claims against VMF as well as CMH, entitling the defendants to judgment as a matter of law. CMH and VMF's motions for summary judgment are **GRANTED** as to counts three, four, five, and six. Plaintiffs' motion for summary judgment is **DENIED** as to these counts.

### D. Count Seven: Unconscionability

Under West Virginia law, a contract is only unconscionable if both procedural and substantive unconscionability are present to some degree. *State ex rel. Johnson Controls. Inc. v. Tucker*, 729 S.E.2d 808, 817 (W. Va. 2012). Procedural unconscionability refers to inequity during the bargaining process and substantive unconscionability refers to the unfairness of a specific contract term. *See id.*

Here, Plaintiffs do not allege any procedural unfairness during the bargaining process. Furthermore, the only term that the plaintiffs argue is substantively unconscionable is the price of the home. Given that the installation problems and subsequent depreciation in value of the home could not have been known to either party at the time the contract was executed, it seems difficult to maintain the proposition that the price was unfair when the contract was signed. Finally, Plaintiffs claim that when CMH allegedly concealed defects in the home and referred installation problems to Skyline its actions were was unconscionable. Post-contract behavior, however, is not generally considered unconscionable. Plaintiffs have not produced evidence of either procedural or substantive unconscionability. Accordingly, CMH and VMF's motions for summary judgment are **GRANTED** as to this count.

### E. Count Nine: Unfair or Deceptive Acts or Practices

Plaintiffs have alleged multiple violations of the West Virginia Consumer Credit Protection Act. ECF No. 1, Ex. 1. In support of their claims Plaintiffs have put forth evidence that CMH was required to use a licensed contractor to install the home and indicated that it would use MJW, but instead hired Bob's, a company not licensed in West Virginia. Plaintiffs have also proffered evidence supporting their claim a CMH employee discovered the marriage line defect and wrote a report detailing significant problems with the home but then concealed the extent of those problems in discussions with the Beatties. This evidence is sufficient to raise a genuine

-10-

issue of material fact as to whether CMH and VMF committed unfair or deceptive acts in violation of the West Virginia Consumer Credit Protection Act. Accordingly, VMF, CMH, and Plaintiffs' motions for summary judgment are **DENIED** as to this count.

### F. Count Ten: Common Law Fraud and Misrepresentation

Plaintiffs contend that CMH and VMF fraudulently promised to use a licensed contractor, falsified paperwork to indicate that a licensed contractor was used, and actively concealed significant installation defects in the home. Plaintiffs have put forth sufficient evidence of these acts to raise a genuine issue of fact for trial. VMF and CMH's motions for summary judgment are therefore **DENIED** as to this count.

### V. Motion for Summary Judgment on Third-Party Complaint & Motion to Compel Arbitration

CMH and VMF filed a third-party complaint against Bob's more than a year after this litigation commenced. Bob's responded with a motion for summary judgment indicating that there was no evidence that CMH contracted Bob's to install Plaintiffs' home. ECF No. 102. Bob's later supplemented this motion and moved in the alternative to compel arbitration. The only contract between CMH and Bob's for which sufficient evidence has been presented is the Independent Contractor Application and Agreement. ECF No. 178. That agreement contains an arbitration clause that requires CMH and Bob's to resolve any conflicts through binding arbitration. ECF No. 102, Ex. 7.

CMH contends that Bob's has waived its right to compel arbitration by "by participating in all aspects of this litigation and by filing its Motion for Summary Judgment seeking adjudication on the merits." ECF No. 196. Bob's has not, however, attempted to first obtain a judgment on the merits and then arbitrate. Bob's was brought into this case late and based on its initial research determined that it had not contracted with CMH to install the home. After further

research Bob's determined that it does not know whether it installed the home, but that if it did so, it did the work under the master agreement. Bob's timely filed a supplemental motion for summary judgment and moved in the alternative to compel arbitration. ECF No. 178. CMH also argues that Bob's cannot compel arbitration because Bob's failed to supply "factual or legal analysis to support a claim that the Agreement is valid and enforceable." ECF No. 196. The Court finds that no further analysis is necessary. The Agreement clearly contains an arbitration clause covering all disputes under the contract that is purported to apply here. CMH created a dispute by filing a third-party complaint against Bob's. Accordingly, Bob's motion to compel arbitration is granted and Bob's is terminated as a party in this case. Bob's Motion for Summary Judgment and Supplemental Motion for Summary Judgment are **DENIED AS MOOT**.

## Conclusion

For the foregoing reasons, Bob's Home Services, LLC's Motion for Summary Judgment (ECF Nos. 102) is **DENIED AS MOOT**. Skyline Corporation's Motion for Summary Judgment (ECF No. 169) is **GRANTED**. Plaintiffs' Motion for Summary Judgment (ECF No. 182) is **DENIED**. Vanderbilt Mortgage and Finance, Inc.'s Motion for Summary Judgment (ECF No. 190) and CMH Homes, Inc.'s Motion for Summary Judgment (ECF No. 192) are **GRANTED IN PART**. Bob's Home Services, LLC's Supplemental Motion for Summary Judgment or Motion to Compel Arbitration (ECF No. 177) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

                ENTER:      December 19, 2014

                ROBERT C. CHAMBERS
                UNITED STATES DISTRICT JUDGE