IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JONATHAN BEATTIE and
HEATHER BEATTIE,

     Plaintiffs,

v.          CIVIL ACTION NO.   3:12-2528

CMH HOMES, INC., d/b/a LUV HOMES #760 and
VANDERBILT MORTGAGE AND FINANCE, INC.,

     Defendants.

**MEMORANDUM OPINION AND ORDER AS TO ATTORNEYS' FEES**

Plaintiff Jonathan Beattie moves to recover reasonable attorneys' fees and litigation costs. For the reasons set forth below, Plaintiff Jonathan Beattie's Motion for Recovery of Reasonable Attorney's Fees and Litigation Costs (ECF No. 393) and Plaintiff Jonathan Beattie's First Supplemental Motion for Recovery of Reasonable Attorney's Fees and Litigation Costs (ECF No. 431) are **GRANTED IN PART** and **DENIED IN PART**.

**I.   Background**

Plaintiffs filed their complaint in this matter in 2012, alleging ten causes of action against CMH Homes, Inc. ("CMH"), Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), and Skyline Corporation ("Skyline) in connection with the installation and repair of Plaintiffs' manufactured home.  The Court granted summary judgment in favor of Skyline before trial.  Many of Plaintiffs' claims against CMH and Vanderbilt were also dismissed before trial, including all but one of the claims of Plaintiff Heather Beattie.

The case was tried before a jury in March, 2015.   Plaintiffs argued their three remaining causes of action: revocation of acceptance, unfair or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), and fraud and misrepresentation.   Plaintiffs sought cancellation of the contract for sale of their home, a refund of the purchase price and finance charges already paid, compensatory damages in connection with the cancellation, compensatory damages for unfair or deceptive acts or practices, and compensatory damages for fraud and misrepresentation.   The jury returned a verdict in favor of Plaintiff Jonathan Beattie, in part, on his cause of action for unfair or deceptive acts or practices, and in favor of Defendants as to the causes of action for revocation of acceptance and fraud.   The jury found that Defendants committed six of the seven alleged unfair or deceptive acts or practices and awarded Plaintiff $25,000 in compensatory damages.

Plaintiff now seeks an award of attorneys' fees and costs which Defendants vehemently oppose, with both sides adding still more to this inordinately litigious post-trial phase of the case.

## II.      Statement of the Law

Except for "fees imposed as a sanction for misconduct by a litigant or counsel, a federal court sitting in diversity and adjudicating state claims applies state law in determining whether to allow attorneys' fees."   *Koontz v. Wells Fargo N.A.*, No. 2:10-cv-00864, 2013 WL 1337260, at *2 (S.D. W. Va. Mar. 29, 2013).   West Virginia law thus governs the issue of attorneys' fees and costs in the present case.   Federal law is, nonetheless, persuasive to the extent that it does not conflict with West Virginia law.   Federal case law is particularly instructive in evaluating the reasonableness of attorneys' fees.

Under the "American Rule," parties generally bear their own fees and costs.   *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994).   Congress and state legislatures have carved out

many exceptions to this rule through statutes containing fee-shifting provisions. The WVCCPA contains such a provision. The statute provides: "In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer." W. Va. Code § 46A-5-104 (1994). An award of attorneys' fees under the WVCCPA is "purely discretionary." *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 740 S.E.2d 562, 572 (W. Va. 2013).

West Virginia has adopted the same baseline calculation for attorneys' fees that the United States Supreme Court outlined in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Bishop Coal Co. v. Salyers*, 380 S.E.2d 238, 248 n. 9 (W. Va. 1989). First, the Court must calculate the lodestar by multiplying the "hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Koontz*, 2013 WL 1337260, at *6. Next, the Court may adjust the lodestar upward or downward, based on a number of factors, to ensure that the fee is reasonable. *See Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 162 (W. Va. 1986). A reasonable fee is one that is sufficient to entice competent counsel to take the case, but not so excessive as to provide a windfall to the attorney. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). The Court should consider the following factors in calculating a reasonable fee:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> *Aetna*, 342 S.E.2d at 162.

3

Two of these factors are of particular importance here. The eighth factor addresses the "most critical" consideration, the results that the plaintiff obtained. *See Heldreth*, 637 S.E.2d at 370. A plaintiff need not win all, or even the majority, of his claims in order to receive attorneys' fees. *Vanderbilt*, 740 S.E.2d at 573. The Court must, however, reduce the award if Plaintiff's relief "is limited in comparison to the scope of the litigation as a whole." *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013). The method for calculating attorneys' fees when a plaintiff has succeeded on some of his claims and lost on others depends on the facts at issue in the case. Where the case involves one problem or set of facts, with numerous alternative legal theories, the fact that the plaintiff has succeeded on only some of those theories "does not necessarily mean that the plaintiff has not substantially prevailed." *Bishop Coal*, 380 S.E.2d at 250. If, however, a plaintiff asserts multiple causes of action, each of which is predicated on distinct facts, "attorneys' fees for the unsuccessful causes of action should not be awarded." *Id.* In reducing an award of attorneys' fees based on unsuccessful claims, the Court cannot merely use a mathematical formula. *Heldreth v. Rahimian*, 637 S.E.2d 359, 366 (2006) ("[T]he trial court is not permitted to apply a percentage reduction based on the ratio of claims pursued to claims prevailed upon."). The Court may identify specific hours that should be eliminated from the total or may otherwise adjust the award to account for the failed claims. *Id.* The Court must, however, make all fee calculations pursuant to the standards set out in *Aetna* and *Bishop Coal*. *Id.*

The sixth factor concerns contingent fees. A contingent fee as arranged between attorney and client "is not a ceiling with regard to the fee awards that an attorney can receive where statutory fee-shifting is involved." *Heldreth*, 637 S.E.2d at 368. Furthermore, a "contingency enhancement" may apply to increase the fee award above the lodestar amount. *See Bishop Coal*, 380 S.E.2d at 249 n. 10. The Supreme Court of Appeals of West Virginia has held that such an

4

enhancement may be applicable where "a plaintiff is litigating a case involving a significant issue of general application, where the likelihood of success is small and the economic value in terms either of money or of injunctive relief to the prevailing plaintiff is small." *Id.* at 249. Such an enhancement is rarely granted.

In addition to fees for the substance of the litigation, under West Virginia law an attorney may recoup fees for time expended proving the reasonableness of his or her fee. *Hollen v. Hathaway Elec., Inc.*, 584 S.E.2d 523, 528 (W. Va. 2003). "Were the attorney not to receive compensation for those hours, the net effect would be to reduce the attorney's hourly rate for all the hours worked on the case." *Id.*

Finally, any attorneys' fees awarded "should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). Paralegal fees may be awarded for legal work, but not for secretarial tasks that would traditionally be covered by a firm's overhead. *Koontz*, 2013 WL 1337260, at *21 (citing *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002)).

### III.   Discussion

#### A.  Attorneys' Fees

The Court's first step is to calculate the lodestar. Turning to the hourly rates requested, the Court notes that Mr. Grubb is an experienced lawyer in the specialized area of consumer law, and his firm has prosecuted many cases of this type throughout West Virginia. Mr. McKinney, until his recent departure, and Ms. Whiteaker had each practiced with this firm for ten years or more, nearly all of the time that they have practiced law, and thus developed expertise in the area of consumer law. Consumer cases often involve complex contractual and statutory issues which require a level of familiarity that few attorneys have. These cases also generally do not produce

large damage awards, even when liability is strong.   Further, consumer plaintiffs rarely possess the financial means to pay for a lawyer, relying instead on contingent fee agreements and the willingness of counsel to defer payment unless and until an action succeeds and the court awards attorneys' fees.   Therefore, the Court gives weight to the nature of this type of case.

Plaintiff submitted a number of affidavits from well-regarded lawyers practicing in West Virginia's state and federal courts to support the hourly rates sought by counsel.   Defendants complain that these affidavits should be ignored because the affiants themselves have an interest in courts awarding high hourly rates.   Of course, Defendants' counter-affidavits have a similar potential for bias.   Having considered and weighed all of the supporting and opposing material, the Court applies its own knowledge of the market, which includes having made prior fee determinations and discussed such maters from time to time with counsel appearing in front of the Court.   Based upon the foregoing, the Court sets the following rates as reasonable compensation for counsel in this case:

Mr. Grubb               $400 per hour

Mr. McKinney         $250 per hour

Ms. Whiteaker        $225 per hour

Turning next to the hours expended, calculating a reasonable number of hours is challenging.   Plaintiffs' counsel submitted an Itemized Costs chart and supplemental material reflecting a total of 1,474 hours expended by three lawyers and two paralegals.   Mr. Grubb already eliminated a number of hours for "billing judgment" and time devoted to their unsuccessful opposition to Defendant Skyline's dispositive motions.   Nonetheless, a significant number of hours must be deducted because Mr. McKinney handled most of the case until he left the firm shortly before trial.   Although the reasons for his departure are irrelevant, the fact

6

remains that his exit from the case came abruptly and late.   Understandably, Mr. Grubb and Ms. Whiteaker were required to devote many more hours to reviewing matters and preparing for trial than they would have had Mr. McKinney remained on the case.   Further, his absence from the concluding stage of this difficult litigation diminishes the value of his time.   To account for this, the Court reduces by ten percent the hours expended by each lawyer.   The Court's calculation is as follows:

| | |
|---|---|
| Mr. Grubb | 642 hours – 10% = 578 hours at $400 =$231,200 |
| Mr. McKinney | 392 hours – 10% = 353 hours at $250 = $88,250 |
| Ms. Whiteaker | 160 hours – 10% =144 hours at $225 = $32,400 |
| | Total= $351,850 |

This total amount is the lodestar for attorneys' fees, the result of the total hours reasonably expended multiplied by the approved hourly rate.

Plaintiff also seeks fees for a total of 281 hours of paralegal services.   Using the same knowledge of the market and in consideration of the material supplied by the parties, the Court finds the rate of **$100** per hour to be reasonable for each paralegal. While Plaintiff did have paralegals perform specialized tasks beyond secretarial work or work otherwise required to be done by more expensive lawyers, the Court finds Plaintiff's submissions flawed.   Many entries by the paralegals appear to be for secretarial work, such as a brief consultation with one of the lawyers about contact with a plaintiff or an expert.   *See Koontz*, 2013 WL 1337260, at *21.   Further, the total number of attorney and paralegal hours claimed by Plaintiffs is disproportionate to the complexity and intensity of this litigation.   The Court finds only two-thirds of the claimed paralegal hours to be reasonable, 41 hours for Ms. White and 146 hours for Ms. Harper.   The Court's calculation is as follows:

Ms. White              41 hours at $100 = $4,100

Ms. Harper             146 hours at $100 = $14,600

Total = $18,700

This total amount represents the lodestar for paralegal fees.

Next, the Court must apply the factors set out in *Aetna* and the guidance from *Bishop Coal* to determine whether the lodestars should be adjusted.   The key to this fee determination is the amount of time that the attorneys expended to achieve what limited success Plaintiff obtained. Plaintiffs' complaint identified ten causes of action, including, inter alia, cancellation, revocation, breaches of contract and warranties, unconscionability, unfair or deceptive acts or practices, and fraud and misrepresentation, against CMH, Vanderbilt, and Skyline.   Plaintiffs paid $138,000 for their manufactured home, which they financed through Vanderbilt.   By the time trial began, Plaintiffs had paid over $86,000 of the purchase price, but had made no payments for many months.   The remaining debt had accumulated to over $130,000, which Plaintiffs sought to eliminate by revoking acceptance of the home.   Therefore, the "buy back" remedy amounted to over $216,000.   Plaintiffs explicitly decided prior to trial that a damage award reflecting repair costs to fix the home and bring it into conformity was not an acceptable remedy.

At every stage of the proceedings, Plaintiffs were first and foremost seeking some form of revocation:   obtaining a refund of their payments, wiping out their debt, and requiring Defendants to take back the manufactured home.   This goal was paramount before and during trial.   The Integrated Pretrial Order listed cancellation as the remedy sought in every one of the six identified categories of claims except the WVCCPA violations.   The jury denied every claim except Plaintiff Jonathan Beattie's claim for WVCCPA violations.   The violations were well established by Plaintiff's evidence, though vehemently opposed by Defendants.   The jury was unmoved,

however, by Plaintiff's evidence and argument that these violations were followed by other acts or omissions which justified the "buy back" remedy.

Even so, there is no way to separate out the time expended on the unsuccessful claims from the WVCCPA claims decided in Plaintiff's favor. The core facts and the nature of the claims against each Defendant, and even Skyline, are inextricably linked. *See Bishop Coal*, 380 S.E.2d at 250. The liable Defendants, CMH and Vanderbilt, the seller and lender, were the principal targets all along, and they dictated the pace and intensity of the litigation. Moreover, the role and potential liability of the defendant and third-party defendants that were dismissed from the case arose from the core evidence common to all of the parties and all of Plaintiff's claims. This case was primarily about poor installation and the sloppy, if not worse, contractual paperwork involved, matters that were most directly the responsibility of CMH. Skyline's involvement, however, followed that of CMH, as Skyline manufactured the home that CMH sold to Plaintiffs and performed some of the repairs and inspections with CMH. Plaintiffs' pursuit of their claims against CMH brought Skyline into their crosshairs. For these reasons, the Court cannot isolate the hours devoted only to the ultimately successful claims.

Further, CMH greatly complicated this case by its decision to assert third-party claims. CMH caused considerable delay and added substantial expense to this case by going after whomever it identified as the installer of the home, first MJW Towing, Inc. and then Bob's Home Services, LLC. Both third-party defendants were terminated from the case before trial. This particular briar patch was cultivated primarily by CMH's own conduct, and it entangled Plaintiffs and the other parties.

The Court also rejects Defendants' argument that time expended on the motions on which Plaintiffs did not prevail should be deducted. Even when Plaintiffs presented motions which

9

were denied, Plaintiffs' positions were reasonable and part of an appropriate litigation strategy.   A losing motion may provide a future benefit by clarifying issues or positions, or even planting a seed for some strategic advantage at trial.

The crux of the matter remains Plaintiffs' limited success on the merits.   Prior to and throughout trial, Plaintiffs were focused on forcing Defendants to take back the manufactured home and refund their payments, under either the revocation claim or on the fraud claim.   They lost.   Mrs. Beattie was dismissed as a party from all but the fraud and misrepresentation claim. Mr. Beattie's success on the WVCCPA violations was relatively minor in the context of three years of intensive litigation.   The violations found by the jury, upon which only $25,000 in damages was awarded, do not constitute a significant victory. Though the Court concludes that Plaintiff substantially prevailed and, thus, is entitled to some award, this factor must result in a substantial reduction in the attorney fees to be awarded.   *See McAfee*, 738 F.3d at 92.   By accepting a contingency fee arrangement, counsel bears the risk of a loss or a limited recovery, as does the client.

There is no simple formula for adjusting the lodestar to reflect the quite limited success that Plaintiff obtained.   Instead, the Court has considered the substantive basis for the jury's rejection of most of Plaintiff's claims while finding for Plaintiff on six of his seven alleged WVCCPA violations.   The jury agreed with Plaintiff that CMH violated the Act by employing an installer who was not licensed in West Virginia; by falsely certifying that an installation inspection was performed; by falsely listing that a West Virginia licensed installer had performed the installation on two separate state-mandated forms; by falsely representing that footers were properly installed; and by falsely representing that installation had been performed in accordance with applicable requirements.   These violations became important elements of the other claims by which

10

Plaintiffs sought a "buy back" remedy.   Plaintiffs' remaining claims, however, were dismissed or not proven at trial.   The Court rejected Plaintiffs' causes of action for rejection, breaches of express and implied warranties, negligence, and unconscionability, and later dismissed their claims against Skyline, all on motions by the defendants.   The jury found that Plaintiff failed to prove a basis for revocation of acceptance and waited too long to sue for fraud or misrepresentation.   Plaintiff's success is thus slight when compared to the claims initially alleged and the remedies initially sought.

Based on Plaintiffs' limited success, the Court concludes that Plaintiff Jonathan Beattie is entitled to only 20% of the lodestar, or $70,370 for attorneys' fees.   Furthermore, the Court concludes that Plaintiff is entitled to 20% of the lodestar for paralegal fees, or $3,740.

Plaintiff also requests a ten percent enhancement "in recognition of the delay in payment and the contingent nature of his attorney's contract."   Federal case law generally rejects the use of a contingency enhancement, and West Virginia courts apply it sparingly.   *See Koontz*, 2013 WL 1337260, at *12; *Bishop Coal*, 380 S.E.2d at 249.   This case did not involve "a significant issue of general application," nor did Plaintiffs seek injunctive relief or a negligible amount of damages. *See Bishop Coal*, 380 S.E.2d at 249.   The Court thus finds that the narrow contingency enhancement is not applicable here.

Accordingly, the total amount awarded for attorneys' fees, including paralegal fees, is $74,110.

### B.  Costs and Expenses

Plaintiffs submitted $30,280 in expenses, much of which Defendants find objectionable. In addition to $5,456 for transcripts, Plaintiffs seek $4,882 for "duplicating and printing costs," consisting of 19,531 pages.   The Court finds this amount excessive.   This case did not depend on

a substantial number of documents or require distribution of lengthy copied material to expert witnesses or the Court.   Plaintiffs have not provided more than a conclusory explanation.   The Court thus declines to award costs for duplication and printing.

Plaintiffs also asked for $10,570 for payments to their expert, Mr. Sadowski.   Recalling his trial testimony, the Court observes that Mr. Sadowski spent a significant portion of his time, and thus his hourly charges, examining the home to estimate a general repair cost.   This work is unrelated to Plaintiff's successful claim.   While he also reviewed the paperwork and inspected the installation, matters clearly related to the WVCCPA violations, the Court finds that Defendants should not bear the full cost of his services.   The Court awards $5,000 to cover a portion of this cost.

The rest of Plaintiffs' costs are reasonable and appropriate items.   Adjusting for the above reductions, the Court awards $19,828 for costs and expenses.

## Conclusion

As set forth above, Plaintiff Jonathan Beattie's Motion for Recovery of Reasonable Attorney's Fees and Litigation Costs (ECF No. 393) and Plaintiff Jonathan Beattie's First Supplemental Motion for Recovery of Reasonable Attorney's Fees and Litigation Costs (ECF No. 431) are **GRANTED IN PART** and **DENIED IN PART**.   The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        July 9, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

12